IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JODY LYNN BARGELOH,                    )
          Plaintiff,                    )
                             )
v.                                     )          CIVIL ACTION NO. 2:14-30123
                             )
CAROLYN. W. COLVIN,                    )
Acting Commissioner of Social Security, )
          Defendant.                    )

PROPOSED FINDINGS AND RECOMMENDATION

     This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Orders entered January 6, 2015, and January 5, 2016 (Document Nos. 3 and 15.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 9 and 14.)

     The Plaintiff, Jody Lynn Bargeloh (hereinafter referred to as "Claimant"), filed an application for DIB on November 18, 2011 (protective filing date), alleging disability as of August 1, 2007,[1] due to ulcerative colitis, lesion/mass on brain, general epilepsy, and migraine headaches. (Tr. at 16, 158, 159-65, 182, 186.) The claim was denied initially and upon reconsideration. (Tr. at 16, 77, 78-87, 88, 89-97, 98-100, 104-06.) On May 21, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 16, 109-10.) A hearing was held on September 17, 2013, before the Honorable I. K. Harrington. (Tr. at 16, 33-73.) By decision dated November 19,

---

     [1] Claimant later amended her alleged onset date to January 15, 2010. (Tr. at 174.)

2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-28.) The ALJ's decision became the final decision of the Commissioner on October 22, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) Claimant filed the present action seeking judicial review of the administrative decision on December 17, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth

and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date, January 15, 2010. (Tr. at 18, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "chronic headaches, general epilepsy, and demyelinating disease of the central nervous system, unspecified," which were severe impairments. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently kneel and crouch, occasionally balance, stoop, crawl, and climb ramps and stairs, and never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme heat, extreme cold, and fumes, odors, gases, dusts, and poor ventilation; and can tolerate occasional exposure to noise, vibration, and hazards such as unprotected heights and moving mechanical machinery.

(Tr. at 22, Finding No. 5.) At step four, the ALJ found that Claimant was able to perform her past relevant work as a switchboard operator and tanning salon attendant. (Tr. at 25-26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ alternatively concluded that Claimant could perform jobs such as a mail clerk and an

officer helper, at the unskilled, light level of exertion, and as a doorkeeper/gate guard, at the semi-skilled, light level of exertion. (Tr. at 27.) On these bases, benefits were denied. (Tr. at 27, Finding No. 7.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on June 6, 1958, and was 55 years old at the time of the administrative hearing on September 17, 2013. (Tr. at 26, 159.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 26, 47, 185, 187.) In the past, she worked as a switchboard operator, an advertising clerk, a phone book deliverer, and a tanning salon attendant. (Tr. at 26, 70, 187-81, 187.)

4

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

***Evidence prior to the Amended Alleged Onset Date, January 15, 2010***:

On January 15, 2007, Claimant presented to Dr. R. Randal Heavner, M.D., and Lilia A. Underwood, CFNP, Claimant's treating medical providers, with an upper respiratory infection, and associated hoarseness, sore throat, and cough. (Tr. at 275.) It was noted that she had a history of ulcerative colitis and benign breast cysts. (Id.) Claimant was diagnosed with chronic mastoiditis and was referred to an otorhinolaryngologist. (Tr. at 276.) On May 2 and October 7, 2007, Claimant presented with an earache. (Tr., at 270-74.) Claimant reported fatigue on September 9, 2009, with a six month history and associated persistent hot flashes, weight loss, feelings of irritability, and decreased sex drive. (Tr. at 267-68.) Lab work was ordered. (Tr. at 269.) On November 24, 2009, Claimant presented for a follow-up evaluation of her earache. (Tr. at 264-65.) Dr. Heavner diagnosed, *inter alia*, anxiety, but noted that she presented with appropriate judgment, was oriented and had normal memory, mood and affect. (Tr. at 265.)

An ultrasound of Claimant's left arm on September 16, 2009, revealed a possible small sebaceous cystic area with internal eschogenicity. (Tr. at 286.) A small dermal lymph node could not be excluded. (Id.) Consultation with physical examination and possible biopsy, was recommended. (Id.)

Claimant treated at the Cleveland Clinic for her headaches. (Tr. at 289-308, 351-56.) On July 8, 2009, Claimant presented for a follow-up exam for her headaches, at which time it was noted that an MRI of Claimant's brain revealed a lesion in the right parietal region, which was not related to her headaches. (Tr. at 290, 294-95.) She reported daily headaches that were intense every three to five days. (Tr. at 290.) She also reported balance problems and memory issues. (Id.)

5

Physical examination revealed normal tone, strength, coordination, reflexes, and gait, with slight imbalance. (Tr. at 290-91.) Mental status was normal. (Tr. at 291.) She was assessed with chronic migraines and was continued on her medications. (Id.)

On November 5, 2009, Dr. Robert L. Rudolph II, M.D., noted that Claimant had presented with a painful lesion over the lateral aspect of her posterior bracium. (Tr. at 244.) She underwent excision of a small lipoma on October 27, 2009, and was released to return to her normal activity on November 5. (Tr. at 244-45.)

***Evidence during the Relevant Period of Time, January 15, 2010, through December 31, 2012:***

On January 21, 2010, Dr. Heavner noted that Claimant's gastroesophageal reflux disease ("GERD") had worsened, that she had an inflamed left ear, and that her anxiety remained stable on medications, with normal mental status exam. (Tr. at 261-63.) Dr. Heavner noted Claimant's medical history to have included ulcerative colitis, benign breast cysts, and a brain lesion. (Tr. at 261.) Dr. Heavner noted that Claimant recently had opened up a new salon. (Tr. at 261.)

Results of a colonoscopy on February 25, 2010, revealed no obvious colitis, although there was evidence of inadequate preparation. (Tr. at 247-52.) Dr. Charles R. Honaker, M.D., recommended a repeat colonoscopy and that Claimant resume her medications, including Azulfidine for the colitis. (Tr. at 247.)

On July 8 and 20, 2010, Dr. Heavner noted Claimant's reports of lower extremity edema, for which he prescribed a diuretic, as well as gynecological complaints. (Tr. at 257-60.) Physical examinations were unremarkable. (Tr. at 253-60.)

Claimant returned to the Cleveland Clinic on May 24, 2011, when it was noted that her headaches remained stable. (Tr. at 296.) It was noted that Claimant had a mild stroke years ago that resulted in residual decreased strength on the left side, which had remained stable over the years. (Id.) It also was noted that Claimant was diagnosed with night seizures, for which she had

6

remained stable on Topamax. (Id.) Claimant reported daily tolerable headaches that she rated at a level two to three out of ten in severity. (Id.) When the headaches worsened, approximately twice a week, she took Seroquel which helped within 30 minutes. (Id.) Claimant described her headaches as a nagging, dull ache in nature on the right parietal side, which were made worse with stress. (Tr. at 296-97.) She reported that her headaches definitely had improved since going to the Cleveland Clinic. (Tr. at 296.) Claimant took Meclofenamate 100mg, daily, for her headaches, in addition to Effexor, Elavil, Namenda, Topamax, Baclofen, Nadolol, and Seroquel as needed. (Id.)

Physical examination revealed that Claimant was "well appearing," was in no acute distress, and presented without pain behaviors. (Tr. at 297.) She had decreased extension of her cervical spine, tenderness to palpation of her cervical spine and upper trapezius, decreased left hand grip, and 4/5 strength of the left lower extremity. (Tr. at 297-98.) She presented with normal coordination, intact and symmetrical reflexes, a normal gait, and normal mental status exam. (Tr. at 298.) Claimant was diagnosed with chronic daily headaches with migrainous features. (Id.) It was noted that her headaches remained stable, but frequent. (Id.) She was continued on her medications and Botox injections were recommended. (Id.)

A repeat brain MRI on August 2, 2011, was stable. (Tr. at 303.) Also on August 2, 2011, Claimant underwent a Botox injection, by Dr. MaryAnn Mays, M.D., for treatment of her headaches. (Tr. at 305-08.) Dr. Mays noted that Claimant experienced daily headaches, with more severe headaches that occurred twice a week. (Tr. at 305.)

On April 30, 2012, Dr. Thomas Lauderman, D.O., a state agency reviewing medical consultant, conducted a physical RFC assessment, on which he opined that Claimant was capable of performing light level work, except that she could never climb ladders, ropes, or scaffolds; only frequently kneel; and only occasionally climb ramps or stairs, balance, stoop, or crawl. (Tr. at 94-95.) Dr. Lauderman attributed these limitations to Claimant's chronic headaches and left side

weakness. (Tr. at 95.) Dr. Lauderman further opined that Claimant should avoid concentrated exposure to temperature extremes and fumes, odors, dusts, gases, and poor ventilations; and should avoid even moderate exposure to noise, vibration, and hazards. (Id.) On August 7, 2012, Dr. R. Mitgang, M.D., a State agency reviewing medical consultant, reviewed the medical record, and affirmed Dr. Lauderman's RFC. (Tr. at 312.)

Claimant returned to Dr. Mays at the Cleveland Clinic on June 4, 2012, about ten months after her last visit. (Tr. at 351-56.) Claimant reported continued headaches and that the Botox injection did not work. (Tr. at 351.) Claimant felt that nothing was working to control her headaches. (Id.) When she experienced the headaches, she also experienced right-sided numbness of her face and arms, associated with a lot of neck pain. (Id.) Claimant reported that the headaches occurred daily; were of an aching, pressure, and throbbing nature; and were at a level seven out of ten in severity. (Tr. at 352.) Dr. Mays noted that Claimant essentially had stopped working and that she was depressed. (Id.) On physical examination, Dr. Mays observed that Claimant was well appearing, was alert and tan, and in no acute distress. (Id.) Mental and physical findings were normal except for bilateral facial sensory loss and decreased sensation in her arms and neck. (Id.) Dr. Mays assessed chronic migraines, fatigue, and disturbance of skin sensation. (Tr. at 353.) She adjusted Claimant's medications, added Effexor, and ordered a brain and cervical spine MRI. (Id.)

An MRI of Claimant's head on June 13, 2012, confirmed white matter hyper-intensities, most prominent on the right, which extended to the ventricular trigone. (Tr. at 332, 334.) The white matter was of uncertain etiology, as small vessel ischemic chronic change or demyelinating process/multiple sclerosis may have given the appearance. (Id.) No enhancing lesion or restricted diffusion was detected. (Id.) The MRI of the cervical spine revealed a small lung nodule in the right upper lobe and a CT scan was recommended. (Tr. at 332-33.) On June 21, 2012, a CT scan of Claimant's chest revealed two nodules in the right lung, cholelithiasis and possible small

gallbladder polyp, several hepatic cysts, and scarring at the posterior aspect of the upper pole of the left kidney. (Tr. at 330.)

On July 31, 2012, Claimant presented to Dr. Heavner with complaints of bilateral lower extremity edema. (Tr. at 348-49.) Physical examination was normal. (Tr. at 349.) At a follow-up examination on September 17, 2012, Claimant reported that the edema was improving. (Tr. at 345.) She complained of loss of interest and a depressed mood. (Id.) Physical examination was unremarkable and Dr. Heavner started Claimant on Lexapro for depression. (Tr. at 346-47.) Claimant reported on October 29, 2012, that she felt well and that her depression was doing better on Lexapro. (Tr. at 341-42.) Physical examination was unremarkable and Dr. Heavner noted that her depression was stable. (Tr. at 342-44.)

### *Evidence After Claimant's Date Last Insured, December 31, 2012*:

On January 29, 2013, Claimant reported to Dr. Heavner that her headaches were not improving. (Tr. at 336.) Claimant's physical examination was unremarkable. (Tr. at 337-38.) Dr. Heavner noted that Claimant's depression was uncontrolled and increased her Lexapro. (Tr. at 338.) He did not alter the treatment for her headaches. (Tr. at 338-40.) Claimant presented for a three-month checkup on April 30, 2013, and reported that she felt well and that her depression was mild in nature and was improving. (Tr. at 362-63.) Physical examination was unremarkable and Dr. Heavner assessed that Claimant's depression and anxiety were stable. (Tr. at 364.)

On August 5, 2013, Claimant presented to Dr. Heavner with complaints of back pain and spasm, following a strain when she removed towels from her dryer. (Tr. at 358.) She reported pain in the left lower back that radiated to her buttock, thigh, and lower leg. (Id.) Claimant described the pain as moderate aching and burning that was worsening. (Id.) She indicated that the symptoms occurred frequently and were exacerbated by standing, sitting, lifting, bending, twisting, and walking down stairs. (Id.) Her symptoms were relieved by rest and recumbency. (Id.) Claimant

9

reported that she was unable to perform any activities of daily living and had difficulty standing or getting up. (Id.) Review of systems revealed back pain with decreased range of motion and muscle weakness. (Tr. at 359.) On physical examination, Claimant presented with tenderness over the left sciatic area and very cautious and guarded movements with position changes. (Tr. at 360.) Dr. Heavner diagnosed lumbar pain with radiation down Claimant's left leg, which he considered as sciatica pain. (Id.) He prescribed mediation and recommended that she use moist heat and limit activities. (Id.)

An MRI of Claimant's lumbar spine, on August 13, 2013, revealed mild broad disc bulges and disc desiccation at most levels, more severe at L4-5, with mild bilateral neuroforaminal stenosis, left greater than right. (Tr. at 357.)

On September 5, 2013, Claimant underwent a pain management consultation at the request of her physician, regarding her low back pain. (Tr. at 366-70.) Her physical and mental status examinations were unremarkable. (Tr. at 369-70.) Dr. Gregory V. D'Eramo, M.D., and Christopher H. Wheeler, N.P., assessed low back pain, lumbar arthropathy, lumbar degenerative disc disease, lumbar spinal stenosis, lumbar radiculitis, sacroiliitis, and myofascial pain. (Tr. at 370.) Epidural steroid injections were recommended. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to follow the analysis required by SSR 96-7p, SSR 96-4p, and 20 C.F.R. § 404.1529, in assessing her credibility. (Document No. 9 at 8-15.) Claimant asserts that the ALJ inaccurately summarized her daily activities and inaccurately included activities she did only on days that she did not have a debilitating headache. (Id. at 10.) Claimant readily admitted that she functioned well on days without headaches, which were about four days per week. (Id.) On bad days however, when she had a headache, Claimant asserted that she stayed in bed. (Id.) Claimant

asserts that this testimony "is at the very heart" of her claim in that she was unable to sustain work activity eight hours per day, five days per week. (Id. at 11.) Claimant further asserts that the ALJ then "parsed the medical evidence, highlighting what part of the medical evidence she believed did not support [Claimant's] allegations." (Id.) In doing so, Claimant asserts that the ALJ relied on an absence of objective medical proof of her pain to discredit her testimony and allegations. (Id. at 12.) Claimant also notes that although the ALJ cited her mild MRI findings as unsupportive of her testimony, the evidence actually was supportive. (Id.) Claimant cites a study published in the October 1, 2013, edition of "Neurology" magazine to suggest that migraines may be a risk factor for structural changes to the brain. (Id.) Claimant further asserts that despite the ALJ's summary of her activities of daily living, the ALJ failed to consider the remaining factors set forth in 20 C.F.R. § 404.1529, when assessing her credibility. (Document No. 9 at 13.) Accordingly, Claimant contends that the ALJ's credibility assessment was not conducted pursuant to the Rulings and Regulations. (Id. at 14.)

In response, the Commissioner asserts that the ALJ's credibility assessment was appropriate and in accordance with the Rules and Regulations. (Document No. 14 at 2.) Contrary to Claimant's allegations, the Commissioner asserts that the ALJ did not dismiss her complaints for a lack of objective medical evidence to support them. (Id. at 12.) Regarding Claimant's contention that the ALJ did not summarize her daily activities as accurately as expressed during the administrative hearing, the Commissioner asserts that "the ALJ's summarization of [Claimant's] daily activities was only part of the ALJ's summarization of [Claimant's] testimony at the hearing." (Id. at 13.) The Commissioner notes that the ALJ had a full understanding of her subjective complaints, including her testimony that she experienced severe headaches three to four times a week that caused numbness, that her headaches lasted all day, that they caused memory loss, that her physicians were attempting to find the medications that worked best for her, and that

11

she closed her tanning salon due to the headaches. (Id. at 13-14.) He also noted her reports of difficulty concentrating due to her headaches and that she experienced daily throbbing and stabbing pain, as stated in her form Function Report. (Id.) Though Claimant contends that the daily activities upon which the ALJ relied were prior to her amended alleged onset date, the Commissioner asserts that the function reports were dated subsequent thereto. (Id. at 16.) Thus, it was appropriate for the ALJ to consider the activities. (Id.) The Commissioner notes that Claimant continued to work at the tanning salon, as late as December 2011, which nearly was two years after her amended alleged onset date. (Id. at 17.)

Notwithstanding Claimant's subjective complaints, the ALJ also considered the medical records, which reflected conservative treatment and relatively normal or benign findings. (Document No. 14 at 14.) The MRI of Claimant's head and brain revealed a benign brain lesion, but there was no indication that it caused her headaches. (Id.) Furthermore, the ALJ noted that Claimant never sought emergency treatment nor was hospitalized due to any of her impairments, including her headaches. (Id.) The ALJ also considered Claimant's alleged medication side effect of memory loss, but concluded that it did not significantly interfere with her ability to work. (Id. at 15.) Claimant acknowledged that her memory loss was worse after her date last insured. (Id.) She also noted that none of Claimant's doctors placed any restrictions on her regarding her chronic headaches. (Id.) Respecting Claimant's other impairments, the ALJ properly found that there was no evidence that they had more than a minimal impact on Claimant's functioning. (Id.) Claimant's epilepsy was controlled with medication, there was an absence of treatment for her ulcerative colitis during the relevant period, and her depression was controlled with medication. (Id.) Accordingly, the Commissioner contends that the ALJ properly assessed Claimant's credibility and his decision is supported by substantial evidence. (Id. at 17-18.)

12

Analysis.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in assessing her pain and credibility. (Document No. 9 at 8-15.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.   20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.   Craig, 76 F.3d at 595.   When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.   . . .   Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a

14

claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In Hines v. Barnhart, the Fourth Circuit stated that

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (citing Craig, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 22.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 23.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected

15

Claimant's ability to work. (Tr. at 23-25.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 23.)

Claimant contends that the ALJ misconstrued her testimony as reflecting her functioning on a daily basis, regardless of whether she experienced any headaches. (Document No. 9 at 10-11.) In her decision, the ALJ summarized Claimant's testimony to reflect daily activities that included watching television, cleaning house, going out to eat, spending time with her sons, playing with the dog, and driving to the grocery store or to her sons' houses. (Tr. at 23.) Additionally, the ALJ noted that in a form Function Report, dated December 8, 2011, Claimant reported that she cared for her personal hygiene, cared for her pets, made the bed, loaded the dishwasher, prepared meals, did laundry, drove a car occasionally, rode in a car, shopped once a week, made bank deposits, watched television, went to the family business, and visited family on a weekly basis. (Tr. at 20-21.) The ALJ concluded that Claimant had no limitations in her activities of daily living. (Tr. at 20.) The ALJ further concluded that Claimant's activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 25.) She also found that Claimant's work history subsequent to the amended alleged onset date, indicated that her daily activities "have, at least at times, been somewhat greater than the [C]laimant has generally reported. (Id.) Regarding Claimant's headaches, the ALJ acknowledged Claimant's testimony that the headaches caused right-side numbness three to four times a week and that she experienced memory loss as a result of the headaches and as a medication side effect. (Tr. at 22, 57.) In addressing medication side effects, the ALJ further noted respecting her functioning, that Claimant had reported "varied and robust daily activities," which indicated that any medication side effects were mild in nature. (Tr. at 24.) The ALJ concluded that Claimant's reported activities indicated that she "functions at a higher level physically, psychologically, and even cognitively than alleged. (Tr. at 24-25.)

At the administrative hearing, Claimant testified that on the days she experienced headaches of great severity, she stayed in her bedroom, free of light and noise. (Tr. at 60.) Claimant testified that she

16

experienced the severe headaches about three days a week. (Tr. at 56.) As the Commissioner notes however, Dr. Mays' treatment notes reflected reports of severe headaches only two days per week. (Tr. at 296, 305.) On days that she did not have headaches, which was on average, four days per week, Claimant testified that she functioned well and typically spent time with her children, cleaned house, did laundry, went out to eat, and watched television. (Tr. at 60-61.) She stated that she visited with her children up to four times a week. (Tr. at 65.)

From the face of the ALJ's decision, it is clear that she placed much emphasis on Claimant's ability to perform a wide array of daily activities. The ALJ even based her analysis of Claimant's side effects on her daily activities. In fact, she found no limitations in Claimant's daily activities. There is no mention in the ALJ's decision however, that Claimant's activities varied among the days on which she experienced headaches of greater intensity. Claimant clearly testified that on the days she experienced severe headaches, she was unable to function and remained in the bed. The record revealed that the number of severe days varied from two to four days per week. Accordingly, the undersigned finds that the ALJ's reliance on Claimant's widespread activities was misplaced and misconstrued the entirety of the evidence. Undoubtedly, the ALJ acknowledged the other factors surrounding Claimant's headaches, including the nature, location, duration, and frequency of her pain, in addition to the treatment and side effects. It is clear however, that the ALJ focused on Claimant's daily activities and absence of any limitation therein. Accordingly, the undersigned finds that although the remainder of the ALJ's credibility analysis conformed to the Rules and Regulations, remand is necessary for further analysis of Claimant's credibility regarding her daily activities associated with her severe headaches.

Notwithstanding the foregoing analysis, the undersigned finds that in further assessing Claimant's credibility, the ALJ appropriately considered the factors set forth in 20 C.F.R. § 404.1529(c). (Tr. at 22-25.) In addition to the nature of Claimant's complaints, the ALJ acknowledged that the medical evidence revealed that diagnostic testing revealed only mild findings, primarily in the form of MRI scans, and that Claimant's treatment was conservative with essentially benign or normal

physical findings. (Tr. at 23.) Claimant did not require any emergent treatment or hospitalizations. (Tr. at 23, 63.) The ALJ noted that Claimant's epilepsy, depression, and anxiety essentially were controlled with medication, and that for the most part, her headaches were controlled with medications. (Tr. at 24.) Despite having been diagnosed with epilepsy, Claimant was not given any driving restrictions, which further supported that her condition was controlled. (Tr. at 64.) The only side effect that Claimant experienced from her medications was memory loss, which the ALJ concluded was a mild side effect that did not interfere with Claimant's ability to perform work activities in a significant manner. (Tr. at 23-24.) Finally, the ALJ noted that Claimant continued to work after her amended alleged onset date. (Tr. at 25.) Moreover, Claimant testified that prior to her date last insured that she did not have any trouble walking, standing, or sitting. (Tr. at 58.) The ALJ therefore, concluded that the clinical findings failed to corroborate Claimant's allegations to the extent asserted and that the objective findings were minimal. (Tr. at 23.) Accordingly, the undersigned finds that with the exception of Claimant's daily activities, the ALJ properly assessed Claimant's credibility pursuant to the appropriate Rules and Regulations.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 9.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings to re-evaluate Claimant's credibility, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of

objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: January 19, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

19